WILLIAM J. CAMPBELL *vs.* CITY OF BOSTON.

Suffolk.   May 6, 1958. — June 9, 1958.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Public Officer.   Municipal Corporations,* Officers and agents.   *Volunteer.*

A resignation from office by an appointed municipal officer, made orally to the appointing authority and voluntarily, although "under protest," was at common law complete upon its acceptance by the appointing authority.

CONTRACT.   Writ in the Superior Court dated February 3, 1955.

The action was heard by *Reardon,* C.J.

*Edwin W. Hadley,* for the plaintiff.

*William H. Kerr,* for the defendant.

WILLIAMS, J.   This is an action of contract by the former chairman of the board of trustees of the statistics department of the city of Boston to recover salary alleged to be

due for the period from January 11, 1950, to April 30, 1951, inclusive. The facts are submitted as a case stated.

The plaintiff was appointed to the said board of trustees by a former mayor of the city for a term which would expire on April 30, 1951, and was designated by the mayor chairman of the board. His annual salary was $4,500. A succeeding mayor having taken office on January 2, 1950, his secretary called the plaintiff by telephone on January 9 and asked him if he would tender his resignation as trustee. It "was a notorious custom in the defendant city for every person holding an office in the municipal government by appointment for a specified term by the mayor, if receiving a salary, to tender his resignation from such office upon the qualification of a new mayor." The plaintiff replied to the secretary's inquiry that he had a specific tenure of office and was entitled to serve his term in full. On the next day, January 10, in response to a written request, the plaintiff visited the mayor who informed him that he wanted his resignation as trustee. The plaintiff asked: "Why? Don't you think I am qualified to hold the position?" The mayor answered that the plaintiff's qualifications were not questioned but that he wanted the plaintiff's resignation so that the office might be filled by a person chosen by him. The plaintiff said that he had a right to finish out his term; that it was not lawful to require him to resign; and that he "resigned under protest." He was paid his salary through January 10, 1950. He took no further steps "to vindicate the rights he now claims until he instituted this action on February 3, 1955." On January 11, 1950, the mayor appointed another as trustee in place of the plaintiff and designated the new appointee chairman of the board. All members of the board are unpaid except the chairman.

The Chief Justice of the Superior Court found for the defendant and the plaintiff appealed. We treat the finding as an order for judgment. *Duff* v. *Southbridge,* 325 Mass. 224, 226.

It is agreed that "[n]o ordinance of the defendant city at any time material to this action prescribed the manner

for the resignation of a head of a department or a member of a municipal board." It is provided, however, by G. L. (Ter. Ed.) c. 41, § 109, that a town officer may resign his office by filing his resignation thereof in the office of the town clerk, and by G. L. (Ter. Ed.) c. 4, § 7, Thirty-fourth, that in construing statutes the word "town" is to be construed as including "city" unless a contrary intention clearly appears. Assuming that c. 41, § 109, is applicable to cities, the challenged resignation was not made in the manner permitted by the statute and its legal effect, therefore, must be tested by the rules of the common law. *Warner* v. *Selectmen of Amherst*, 326 Mass. 435, 437. According thereto all that is required is that the resignation shall be voluntary and shall be accepted by the appointing power. It is not necessary that the resignation be in writing. *Johnson* v. *Griswold*, 177 Mass. 34. Once accepted, the severance from office is complete.

It is a familiar principle of law that, unless otherwise provided by statute, where a person with full knowledge of all the circumstances pays money voluntarily to another without fraud, compulsion or duress, such money cannot be recovered back although no obligation to make such payments existed. It applies "although he protests at the time against his liability and declares that he makes the payment under coercion." *Rosenfeld* v. *Boston Mutual Life Ins. Co.* 222 Mass. 284, 289. *Carey* v. *Fitzpatrick*, 301 Mass. 525, 527, and cases cited. This principle because of public policy is particularly important in considering the effect of the voluntary resignation of a public official. "Official robes cannot be put off and assumed at the pleasure of individuals or officers. Public interest requires that all possible certainty exist in the election of officers and the beginning and expiration of their terms, by law or resignation, and forbids that either should be left to the discretion or vacillation of the person holding the office or the officer or body having the appointing power." *Warner* v. *Selectmen of Amherst*, *supra*, at p. 439. "Cases which hold that taxes illegally assessed and paid under protest in writing may be recovered

back, in accordance with statutes authorizing such recovery, have no application to the case at bar." *Rosenfeld* v. *Boston Mutual Life Ins. Co., supra,* at p. 290.

The facts disclose nothing to warrant an inference of fraud, compulsion or duress. The plaintiff's act was voluntary and legally effective to cause an immediate severance from office. His right to salary ended with his incumbency.

*Order for judgment affirmed.*